IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CANDICE QUINN KELLY

    v.                         :   Civil Action No. DKC 14-1636

ANTHONY B. COVINGTON

## MEMORANDUM OPINION

Presently pending and ready for resolution in this defamation case is a motion to dismiss filed by Defendant Anthony Covington. (ECF No. 6). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be granted.

## I.  Background

### A.  Factual Background

The following facts are either alleged in Plaintiff's complaint (ECF No. 1), or are matters of public record of which the court may take judicial notice.

Plaintiff Candice Kelly is the former President of the Board of Commissioners for Charles County, Maryland. Defendant Anthony Covington is the current State's Attorney for Charles County. On December 29, 2011, Plaintiff, while serving as President, obtained a copy of an Internal Revenue Service ("IRS") W-2 Form that was prepared by the County and issued to a

former County Commissioner who served in the year prior to Plaintiff's election as President of the County Commission. (ECF No. 1 ¶ 22). Plaintiff asserts that she requested the W-2 Form to ascertain whether the County was understating Commissioners' personal use of County-owned vehicles, which is a form of taxable income, and consequently whether Commissioners were receiving a *de facto* salary increase without any public notice or legislation. (*Id.* ¶¶ 26-27). According to Plaintiff, her request to view the W-2 Form was well within her rights as County Commissioner because she had supervisory rights over County employees' compensation plans and over County property, and additionally, the County has a duty to prepare and submit accurate W-2 Forms. (*Id.* ¶¶ 23-25).

On April 16, 2012, Defendant and his Deputy State's Attorney began to investigate Plaintiff. (*Id.* ¶ 20). During the course of the investigation, Defendant interviewed several County employees and learned from these interviews that Plaintiff had obtained a former Commissioner's W-2 Form. (*Id.* ¶ 22). Although a grand jury investigation was conducted, Defendant never charged Plaintiff with any criminal conduct. (*Id.* ¶ 37). Defendant was advised by the Office of Special Prosecutor not to prosecute Plaintiff. (*Id.* ¶ 32).

On January 7, 2014, Defendant filed a petition with a particular judge, requesting the release of the grand jury

transcripts from the investigation of Plaintiff's conduct. (*Id.* ¶ 38). The judge, who was a former Deputy State's Attorney of Defendant, had previously participated in the investigation of Plaintiff. (*Id.* ¶ 39). Plaintiff alleges that Defendant bypassed the standard judicial procedure for obtaining the order, which required that Defendant file a petition with the clerk of court, in order to ensure that the judge assigned to the motion was unbiased. (*Id.* ¶¶ 38-40). The judge granted Defendant's petition and issued a judicial order permitting the release of the grand jury transcripts that were generated during the investigation of Plaintiff. (*Id.*).

On February 5, 2014, Defendant released the grand jury transcripts and made comments to a reporter regarding the grand jury investigation. The comments were later published. Defendant stated that "just because a case is not prosecuted does not mean a crime has not occurred." (*Id.* ¶¶ 45-46). Defendant also remarked that:

> W-2 forms are considered tax information. They are not considered discloseable or releasable. To attempt to get that information is not right unless you're entitled to it. I know Commissioner Kelly has said repeatedly there was no wrongdoing. Well I just gave you what the law is, so I think people can look at the grand jury documents and decide for themselves.

(*Id.* ¶ 47).

Plaintiff alleges that Defendant's actions have "caused substantial damages to Plaintiff Kelly, including damage to her reputation, damage to her ability to perform her job responsibilities . . . , damage to her future income-earning capacity, and damage to her mental health and well-being." (*Id.* ¶ 57).   As relief, Plaintiff seeks compensatory damages, punitive damages, injunctive relief, attorneys' fees, and costs. (*Id.* at 12).

### B.  Procedural History

On May 20, 2014, Plaintiff filed a complaint against Defendant in this court, asserting federal question jurisdiction, and alleging two counts:  (1) a violation of her due process rights (both substantive and procedural) and her right to confrontation under 42 U.S.C. § 1983; and (2) defamation under Maryland common law.   On June 30, 2014, Defendant moved to dismiss.  (ECF No. 6).   The motion is fully briefed.  (ECF Nos. 7 and 8).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2)

still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). As recently explained by the United States Court of Appeals for the Fourth Circuit:

> [A] complaint must contain "[f]actual allegations [sufficient] to raise a right to relief above the speculative level." *Id.; see also Iqbal*, 556 U.S. at 678 (holding that a complaint "tender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not "suffice" (quoting *Twombly*, 550 U.S. at 557)). The Supreme Court has accordingly held that Rule 8(a)(2) requires that "a complaint . . . contain[] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in the sense that the complaint's factual allegations must allow a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (*quoting Twombly*, 550 U.S. at 570); *see also Coleman*, 626 F.3d at 191 (finding a complaint inadequate because its allegations "fail[ed] to establish a plausible basis for believing . . . that race was the true basis for [the adverse employment action]").

*McCleary-Evans v. Md. Dept. of Transp.*, No. 13-2488 (4th Cir. March 13, 2015).

5

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A. 42 U.S.C. § 1983 Claim (Count I)

Count I of Plaintiff's complaint alleges a 42 U.S.C § 1983 claim based on Defendant's "abuse of his governmental power" which has allegedly "violated Plaintiff Kelly's Constitutional rights, including her due process rights (both substantive and procedural) and her right to confrontation." (ECF No. 1 ¶ 60). 42 U.S.C. § 1983 authorizes a suit for damages against any individual "who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or

other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." In order to state a claim under Section 1983, a plaintiff must allege: (1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by a state actor. *West v. Atkins,* 487 U.S. 42, 48 (1988).

### 1. Eleventh Amendment Immunity

Defendant argues that to the extent Plaintiff is suing Defendant in his official capacity, her Section 1983 claim is barred because he is a state official entitled to Eleventh Amendment immunity. (ECF No. 6-2, at 7). Plaintiff does not appear to understand the difference between official capacity and individual capacity suits:

> While "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and in essence are "suit[s] against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotation marks omitted). Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets. See *id*. at 166, 105 S.Ct. 3099. Furthermore, different legal theories of liability are

> required for the plaintiff, and different
> defenses are available to the defendant, in
> a personal-capacity action than in an
> official-capacity action. *See id.* at 166–
> 67, 105 S.Ct. 3099.

*Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000). The complaint
asserts that Defendant was acting "in his official capacity,"
yet she disavows any intent to sue the State of Maryland. (ECF
No. 7, at 8).[1]

In *Gray v. Laws,* 51 F.3d 426, 431 (4th Cir. 1995), the
United States Court of Appeals for the Fourth Circuit discussed
Eleventh Amendment immunity as it pertains to state officials:

> The Eleventh Amendment provides that "[t]he
> Judicial power of the United States shall
> not be construed to extend to any suit in
> law or equity, commenced or prosecuted
> against one of the United States by Citizens
> of another State, or by Citizens or Subjects
> of any Foreign State." U.S. Const. amend.
> XI. Although by its terms the Amendment
> applies only to suits brought against a
> state by "Citizens of another State," it is
> well established that "an unconsenting State
> is immune from suits brought in federal
> courts by her own citizens as well as by
> citizens of another State." *Edelman v.
> Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347,
> 1355, 39 L.Ed.2d 662 (1974). This immunity
> extends as well to state agencies and other
> government entities properly characterized
> as "arm[s] of the State." *Mt. Healthy City
> Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S.
> 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471
> (1977); *see also Puerto Rico Aqueduct and
> Sewer Auth. v. Metcalf & Eddy, Inc.,* 506

---

[1] Plaintiff may be using the phrase "official capacity" to
denote that Defendant was acting under color of state law, a
requirement for Section 1983 liability.

> U.S. 139, ----, 113 S.Ct. 684, 688, 121
> L.Ed.2d 605 (1993) ("[A] State and its
> 'arms' are, in effect, immune from suit in
> federal court."). Like the state itself,
> state officers acting in their official
> capacity are also entitled to Eleventh
> Amendment protection, because "a suit
> against a state official in his or her
> official capacity is not a suit against the
> official but rather is a suit against the
> official's office," and "[a]s such, it is no
> different from a suit against the State
> itself." *Will v. Michigan Dep't of State
> Police,* 491 U.S. 58, 71, 109 S.Ct. 2304,
> 2312, 105 L.Ed.2d 45 (1989) (citations
> omitted).

In *Joseph v. Maryland,* No. WDQ-13-0402, 2014 WL 494578, at *4
n.21 (D.Md. Feb. 5, 2014), Judge Quarles noted that "the weight
of authority is that Maryland state's attorneys are [] state
officials entitled to Eleventh Amendment immunity." *Id.*
(finding that Section 1983 claims against the State's Attorney
for Allegany County, Maryland were barred due to Eleventh
Amendment immunity). Furthermore, Judge Quarles explained that
Eleventh Amendment immunity may bar a plaintiff from seeking
monetary damages, but not necessarily injunctive relief:

> If the action is essentially to recover
> money from the state, the official may
> invoke Eleventh Amendment immunity because
> the state is the real party in interest.
> However, the state official is subject to
> liability if the plaintiff: seeks to enjoin
> the official from engaging in
> unconstitutional conduct, alleges that the
> official's violation is ongoing, and
> requests only prospective relief.

*Id.*

Because the Eleventh Amendment bars suits for damages against state officials in their official capacity, any official capacity claim for damages is barred.   Plaintiff purports to allege, however, an ongoing constitutional violation by using language in her complaint that suggests Defendant is still violating her rights and she seeks injunctive relief.   For instance, Plaintiff asserts that she is seeking "to enjoin Defendant Covington's continued wrongdoing" (ECF No 1 ¶ 3); "Defendant Covington continues to abuse the prosecutorial power, and disseminate falsehoods about Plaintiff Kelly" (*Id.* ¶ 50); and "Defendant Covington's past and ongoing malfeasance directly caused substantial damages to Plaintiff" (*Id.*).   The complaint, however, describes only two incidents where Defendant is alleged to have violated Plaintiff's rights — Defendant's alleged misconduct in obtaining the grand jury transcripts and Defendant's release of and media interview discussing the grand jury transcripts.   In addition, although Defendant is still the State's Attorney, Plaintiff disavows any intent to sue the State of Maryland (or Defendant Covington in his official capacity). Accordingly, the complaint will be construed as asserting only a personal capacity claim.

### 2. Qualified Immunity

To the extent that Defendant is being sued in his personal or individual capacity, Defendant argues that Plaintiff's Section 1983 claim should be dismissed because he is entitled to qualified immunity. Qualified immunity is an affirmative defense to Section 1983 claims and "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Two inquiries must be satisfied to determine whether an official is entitled to qualified immunity: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds in Pearson,* 555 U .S. at 236. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 555 U.S. at 236. The burden is on the Plaintiff to prove that the

alleged conduct violated the law, while Defendant must prove that the right was not clearly established. *Henry v. Purnell,* 501 F.3d 374, 377–78 (4th Cir. 2007). Finally, the court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier,* 533 U.S. at 200.

> A basic requirement of a 42 U.S.C. § 1983 violation is "the depriv[ation] of a right secured by the Constitution and laws of the United States." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Conduct violating state law without violating federal law will not give rise to a § 1983 claim. *United States v. Van Metre*, 150 F.3d 339, 347 (4th Cir. 1998).

*Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 145 (4th Cir. 2014). Plaintiff purports to assert Fourteenth Amendment deprivations:

> The Fourteenth Amendment prohibits the States from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Due process contains both substantive and procedural components. Procedural due process prevents mistaken or unjust deprivation, while substantive due process prohibits certain actions regardless of procedural fairness. *Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

*Id.* at 145–46.

In order to analyze Plaintiff's claims, it is necessary first to identify the source, if any, of any right she claims was infringed:

> The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in "property" or "liberty." *See* U.S. Const., Amdt. 14 ("nor shall any State deprive any person of life, liberty, or property without due process of law"); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process. *Ibid.*

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S.Ct. 977, 989 (1999).

While not entirely clear, Plaintiff may be attempting to claim several allegedly protected interests:  a right to secrecy of state grand jury proceedings, a right to reputational integrity, and a right to public employment.  As will be seen, she has not succeeded.

The right to a grand jury is found in the Fifth Amendment to the United States Constitution and applies to the federal government.  That right has not been incorporated into the Due Process Clause of the Fourteenth Amendment so as to be applicable to the states.  *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972).  Even the requirement of grand jury secrecy in federal court is not of constitutional dimension.  Rather, it is a "policy" that has been codified in the rules of procedure:

13

9.   Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye. *See* Calkins, Grand Jury Secrecy, 63 Mich.L.Rev. 455, 457 (1965). The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system. See *Costello v. United States*, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943). Federal Rule Crim.Proc. 6(e) codifies the requirement that grand jury activities generally be kept secret, by providing: "A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, [or] an attorney for the Government . . . shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. . . . A knowing violation of rule 6 may be punished as a contempt of court." Although the purpose for grand jury secrecy originally was protection of the criminally accused against an overreaching Crown, see Calkins, Grand Jury Secrecy, *supra*, with time it came to be viewed as necessary for the proper functioning of the grand jury. See n. 10, *infra*.

10.   *In United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-682, n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 (1958), we said that the reasons for grand jury secrecy had been summarized correctly in *United States v. Rose*, 215 F.2d 617, 628-629 (CA3 1954): "'(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those

14

> indicted by it; (4) to encourage free and
> untrammeled disclosures by persons who have
> information with respect to the commission
> of crimes; (5) to protect innocent accused
> who is exonerated from disclosure of the
> fact that he has been under investigation,
> and from the expense of standing trial where
> there was no probability of guilt.'"

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 219 nn.9-10 (1979).  And, in federal court, there is no individual, protected federal constitutional right to grand jury secrecy.  *See, e.g., Barry v. United States*, 865 F.2d 1317, 1323 (D.C. Cir. 1989).[2]  There is no provision of federal law or rules that provides a federal right to secrecy in state grand jury proceedings.

It is correct that Maryland statutes and rules provide for grand jury secrecy.  *See*, Md.Code Ann., Cts. & Jud. Proc. §§ 8-412, *et seq.* and Md. Rule 4-642.  Those laws and rules cannot be the foundation for a Section 1983 claim.  Furthermore, neither the facts asserted by Plaintiff, nor the cases cited by her, support her assertion that Defendant has violated her procedural due process rights by securing the release of the grand jury transcripts.  For example, Plaintiff cites *Finn v. Schiller,* 72 F.3d 1182 (4th Cir. 1996), for the proposition that "one of the

---

[2]  State constitutions may create such a right, but Maryland's does not.  *See, e.g. In the Matter of Rutti*, No. CA-1771 AN, 1979 WL 209649, at *4 (Ohio App. July 13, 1979); *State v. Lloyd*, --- So.3d ---, 2015 WL 160337, at *10 (La. App. 2 Cir. January 14, 2015).  Here, only federal rights may be the subject of a Section 1983 action.

purposes of grand jury secrecy is to 'assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'"  *Id.* at 1189-90 (*quoting Douglas Oil Co. v. Petrol Stops N.W.,* 441 U.S. 211, 219 (1979)).  The plaintiff in *Finn*, who was the subject of a grand jury investigation, brought a civil suit against the Assistant United States Attorney for disclosing information during an ongoing grand jury proceeding, which leaked to the media and allegedly harmed his reputation and business, in violation of Federal Rule of Criminal Procedure 6(e).  The plaintiff alleged that the States Attorney had violated Federal Rule of Criminal Procedure 6(e) and his constitutional rights.[3]  In addressing "whether Federal Rule of Criminal Procedure 6(e) [which governs grand jury secrecy] provides a civil remedy for its violation" the Fourth Circuit found that:

> Although we find that the language of [Fed.R.Crim.P. 6(e)(2)] provides both civil and criminal contempt, it does not follow that the rule creates a private cause of action.  A claimant may notify the court of a violation of the rule or may petition the court to investigate an alleged violation, but such complainant may not proceed by way of a civil action against the alleged violator.

---

[3]  The Fourth Circuit did not address the plaintiff's arguments that his Fifth Amendment rights had been violated by the disclosure, because those arguments had not been considered by the district court.  *Finn,* 72 F.3d at 1190-91.

*Id.* at 1188.   Accordingly, *Finn* does not support that Plaintiff, or any other person who has been injured by a violation of a grand jury secrecy rule, has a Section 1983 claim against the violator; rather, it suggests that a violation of Fed.R.Crim.P. 6(e) does not provide a private cause of action for the injured party, but permits a district court to investigate the violation and impose contempt sanctions when necessary.[4]   Even if Plaintiff's allegations plausibly established that Defendant's conduct violated the state rules for release of grand jury transcripts, a technical violation of a state procedural rule would not infringe on Plaintiff's due process rights unless it deprived Plaintiff of a substantive liberty or property interest.[5]

In this case, Plaintiff's "liberty interests" were never implicated because she was never arrested, indicted, or prosecuted, and accordingly, there was no legitimate threat to

---

[4] Other courts have also found that violation of the federal grand jury secrecy rule are limited to the remedies provided by Rule 6.   *See United States v. Malatesta,* 583 F.2d 748, (5th Cir. 1978) (finding that a violation of Rule 6(e) "may be adequately enforced by a contempt citation"); *see also, e.g., Matter of Grand Jury Investigation (90-3-2),* 748 F.Supp. 1188, 1214 (E.D.Mich. 1990) (noting that "Rule 6, its legislative history, and traditional court practices lead to the ineluctable conclusion that the rule authorizes criminal contempt sanctions, not a civil cause of action").

[5] Because Plaintiff has not stated a plausible violation of her procedural rights, it is not necessary to address the parties' arguments regarding absolute prosecutorial immunity.

17

deprive her of liberty.  Although it may impose stigma, publicly labeling someone a criminal does not amount to a criminal prosecution or implicate the same liberty interests as a criminal prosecution because it does not threaten to deprive a person of her freedom. Unless defamatory comments in some way threaten an individual's liberty interests by depriving her of a fair criminal *process,* they do not state a plausible procedural due process violation.  *Cf. Buckley v. Fitzsimmons,* 509 U.S. 259, 276-77 (1993) (petitioner argued that the prosecutor's false and prejudicial statements to the media defamed him and inflamed the populace, depriving him of his right to a fair trial).  In *Paul v. Davis,* 424 U.S. 693, 701 (1976), the Supreme Court of the United States addressed whether a defamation claim against state officials, without a more tangible injury to one's legal or employment status, was sufficient to invoke the procedural protections of the Due Process Clause:

> The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law.  While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient

to invoke the procedural protection of the
Due Process Clause.

The Court clarified that in order to establish a Section 1983 claim based on defamation, the defamed individual must have been deprived of his legal status, government employment, or a right previously held under state law, in order to implicate a constitutionally-protected "liberty" or "property" interest. *Id*. at 701-12. The Fourth Circuit recently addressed a similar issue in *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314-16 (4th Cir. 2012), and noted that the Supreme Court's holding from *Paul* was still applicable. The Fourth Circuit explained that "[i]n the context of public employment, [a] change in [legal] status occurs when the government acting as an employer discharges one of its employees." *Id*. at 315. It also noted that the impairment of future employment prospects alone "does not amount to a *constitutional* injury." *Id*.

Plaintiff Kelly's allegations regarding Defendant's defamatory statements are not sufficient to establish that she has been deprived of "liberty" or "property" in violation of her due process rights. Although Plaintiff alleges in her opposition that Defendant's statements caused a change in her "legal status (loss of elected office)[,]" she provides no factual support for this statement. (ECF No. 7, at 16). Her complaint does not allege that she was terminated or removed

from her position as President of the Charles County Board of Commissioners.   Instead, the complaint indicates that she retained her position, as she alleges that Defendant's conduct impeded her from performing her job responsibilities as Commissioner.   (ECF No. 1 ¶ 57).   Even if Plaintiff had been removed from her elected office, it is not clear that her property interests would have been infringed because as noted by the Second Circuit in *Velez v. Levy,* "elected offices cannot constitute 'property' within the meaning of the Fourteenth Amendment['s Due Process Clause.]"   401 F.3d 75, 86 (2$^{d}$ Cir. 2005) (*citing Snowden v. Hughes,* 321 U.S. 1, 7 (1944)). Moreover, Plaintiff's conclusory allegation that her "property rights" were implicated, because her reputation was impacted and she had to expend money on legal fees, are unavailing.   As discussed above, a mere reputational injury is not enough to sustain a Section 1983 claim, and Plaintiff has not provided facts showing that she was deprived of any other tangible "liberty" or "property interest."[6]

---

[6] Any argument that Defendant's conduct impeded her future employment prospects by causing her to lose an ensuing election, also would not state a plausible Section 1983 claim because, as noted in *Shirvinski,* impairment of future employment prospects is not a constitutional injury.   673 F.3d at 315; *see also Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994) (holding that reputational stigma that interferes with obtaining employment or practicing a profession is not sufficient to state a constitutional claim).

Plaintiff also alleges that Defendant violated her Sixth Amendment rights by making statements to the media about her, which purportedly was a prosecution "in the court of public opinion," without her being present to confront him.  (ECF Nos. 1 ¶ 48 and 7, at 9).  Defendant argues that Plaintiff has not stated a constitutional violation of her right to confront adverse witnesses under the Sixth Amendment, because that right pertains to criminal prosecutions and Plaintiff has not alleged that she was ever prosecuted or even charged with a crime.  (ECF No. 6-2, at 16).  Plaintiff fails to rebut this argument in her opposition.

As Defendant aptly notes, the Sixth Amendment's right to confront adverse witnesses by its plain language pertains to "criminal prosecutions."  As discussed above, Plaintiff was never charged with or prosecuted for a crime.  Because Plaintiff has not alleged a plausible deprivation of any of her constitutionally-protected rights, Plaintiff's Section 1983 claim will be dismissed.

### B.    State Law Defamation Claim (Count II)

Because Plaintiff's federal law claim is being dismissed, the court must decide whether to exercise supplemental jurisdiction over the remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has

dismissed all claims over which it has original jurisdiction");
*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)
("[I]f the federal claims are dismissed before trial . . . the
state claims should be dismissed as well."). In this instance,
the court declines to exercise supplemental jurisdiction and the
state law claim will be dismissed as well.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss
will be granted.  A separate order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge